Lois L. MULLENS, Appellant,

v.

TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellee.

No. 5316.

Court of Civil Appeals of Texas, Waco.

March 14, 1974.

Rehearing Denied April 4, 1974.

Leland Dennis II, Bean, Francis, Ford, Francis & Wills, Dallas, for appellant.

Burford, Ryburn & Ford, Wayne Pearson, J. Dan Bohannan, Dallas, for appellee.

## OPINION

JAMES, Justice.

This is a suit to set aside a compromise settlement agreement in a workmen's compensation case. Plaintiff-Appellant Lois L. Mullens had signed a compromise settlement agreement of her workmen's compensation claims and had received the benefits thereof, and brought this suit to set aside the agreement upon the ground of mutual mistake as to the nature and extent of her neck injury. Trial was had to a jury which in effect found total temporary disability for ten months and twenty days plus a partial permanent incapacity beginning January 1, 1973. Then the jury answered seven special issues (Nos. 12–18 inclusive) concerning mutual mistake all in favor of the Plaintiff-Appellant.

Defendant-Appellee Texas Employers Insurance Association filed a motion to disregard special issues 12 through 18 concerning mutual mistake and for judgment notwithstanding the verdict. The trial court sustained Defendant's motion and entered judgment that Plaintiff take nothing.

Plaintiff appeals on one point of error, to wit, that the trial court erred in disregarding the jury's answers to Special Issues 12 through 18 and in granting judgment for the Defendant notwithstanding the verdict. We overrule Plaintiff-Appellant's point of error and affirm the trial court's judgment.

The sole question posed in this case is: Can a compromise settlement agreement in a workmen's compensation case be set aside on the ground of mutual mistake of the parties concerning the nature and extent of Plaintiff's injuries? We hold that it cannot be set aside on this ground, and in so holding affirm the trial court's judgment.

Plaintiff Lois L. Mullens was injured on or about February 2, 1972, while working for Universal-Rundle, Inc., in Corsicana, Texas. Her job consisted of making final repairs on fiberglass bathtubs and shower stalls in order to make sure they were finished properly before inspection. On the occasion of the injury in question she was in a tub buffing it when somebody came by the tub and hit it, thereby scaring her and causing her to jerk around and injure her neck.

A few days after the injury, she reported it to her foreman, a Mr. Robert McDaniel. McDaniel tried to get her to see the company doctor, a Dr. McGary; however, she did not want to see Dr. McGary. She expressed a desire to see Dr. E. Scott Middleton of Corsicana, Texas. McDaniel agreed that she could see Dr. Middleton, who was not shown in any way to be connected with Plaintiff's employer or Defendant.

Plaintiff saw Dr. Middleton about two weeks after the accident, whereupon he treated her neck and sent her to an orthopedic specialist in Waco, a Dr. R. W. Covington, who also was not either a company doctor or one employed by Defendant. Plaintiff saw Dr. Covington twice, the last time being on or about April 3, 1972. These two doctors are the only doctors Plaintiff saw prior to executing the agreement.

On March 13, 1972, Dr. Covington wrote a detailed report by way of a letter to Dr. Middleton, which may be summarized by saying that Plaintiff's neck injuries amounted only to muscular discomfort. Dr. Covington in the letter said that he would "reevaluate her again in about two to three weeks and hopefully can return her to work at that time."

Then on April 24, 1972, Dr. Covington wrote a letter to Defendant's office in which he reaffirmed that Plaintiff's neck injuries amounted to muscular discomfort, and then ended the letter by saying he advised her that "if she is not markedly better in three to four weeks, then perhaps she should be referred to a neurosurgeon by her primary physician Dr. Middleton."

Then also on April 24, 1972, Dr. Middleton wrote a notice certifying that Plaintiff Lois Mullens may return to work on April 25, 1972.

Plaintiff employed as her attorney Mr. Louis Francis after her second visit to Dr. Covington. Plaintiff never had any conversation with any doctor after employing Mr. Francis. Likewise, Mr. Francis never contacted any doctor concerning Plaintiff's condition prior to executing the agreement, but secured the medical information from Defendant's files.

The agreement was executed on September 7, 1972, by Plaintiff Lois Mullens, her attorney Mr. Francis, and the Defendant Texas Employers Insurance Association, and was approved by the Industrial Accident Board on September 13, 1972. See Article 8307, section 12, Vernon's Annotated Civil Statutes, for authority of the Industrial Accident Board to approve such agreements. The agreement recites that Defendant had previously paid $546.00 to Plaintiff and was settling her claim for an additional $2500.00, and in addition thereto Defendant agreed to pay for "future medical aid, hospital as provided herein: services, nursing, chiropractic services, and medicines authorized in advance by the Association and rendered during the period ending February 1, 1973, by Dr. Robert Stockton and Dr. E. Scott Middleton." The last sentence of the agreement states: "The undersigned agree that the liability of the above insurance company, or the extent of the injury is uncertain, indefinite or incapable of being satisfactorily established."

The order of the Industrial Accident Board approving the agreement, shown on the face of the agreement, likewise includes the following recitation: "The Board finds the liability of the insurance company, or the extent of the injuries of the employee, is uncertain, indefinite and incapable of being satisfactorily established."

It was Mr. Francis who insisted upon the future medical expense being left open for a period of time, since he testified that it was his belief that Plaintiff would need additional treatment. Mr. Francis moreover wanted a neurosurgeon specified in the agreement for future medical treatment, hence the naming of Dr. Robert Stockton, a neurosurgeon, in the agreement.

Plaintiff testified that her neck condition had gotten worse between her last visit to Dr. Covington (on or about April 3, 1972) and the time of signing the agreement on September 7, 1972, and that she had told Mr. Francis about this before the agreement was executed. However, she never saw another doctor after her second visit to Dr. Covington until after the agreement was signed.

A letter from Mr. Francis to Defendant dated June 29, 1972, includes this language:

"It appears from the existing medical that her injury is limited to some sort of strain or sprain as opposed to nerve root involvement and I am willing to settle it on that basis. I am a little curious as to why she never reached a neurosurgeon inasmuch as that was Dr. Covington's suggestion in his report dated April 24, 1972."

After executing the agreement, Plaintiff made an appointment with Dr. Stockton the neurosurgeon. About two weeks later Dr. Stockton put her in Providence Hospital, at Waco, Texas, where a myelogram was run on her neck. The next day Dr. Stockton performed surgery on her neck, same being the fusion of two ruptured cervical discs, C-4/C-5 and C-5/C-6. The expense for this surgery was $2076.95 which was paid by Defendant.

Mr. Francis learned from a conversation with Plaintiff in October or November of 1972 of the Plaintiff's surgery. On January 29, 1973, three days before the deadline set out in the agreement for the open fu-

ture medical to end (February 1, 1973) Plaintiff filed this suit to set aside the agreement.

As stated above, the jury answered special issues 12 through 18 inclusive all in favor of plaintiff as follows:

(12) That Plaintiff believed her injury was limited to muscle damage when she entered into the agreement;

(13) That her injury was not limited to muscle damage;

(14) That she relied upon the belief that her injury was limited to muscle damage in making the agreement;

(15) That the belief that her injury was limited to muscle damage was a material inducement to Plaintiff in making the agreement;

(16) That Defendant believed Plaintiff's injury was limited to muscle damage when it entered into the agreement;

(17) That Defendant relied upon the belief that Plaintiff's injury was limited to muscle damage in making the agreement; and

(18) The belief that Plaintiff's injury was limited to muscle damage was a material inducement to Defendant in making the agreement.

As stated before, the trial court upon Defendant's motion disregarded the above seven special issues and entered judgment that Plaintiff take nothing:

In the case at bar, there is no charge of fraud on the part of Defendant or of the Plaintiff's employer toward Plaintiff, but only the issue that the parties were under a mutual mistake as to the condition of Plaintiff's neck at the time the agreement was executed. The two doctors who examined Plaintiff before the agreement was executed, Dr. Middleton and Dr. Covington, were both doctors of Plaintiff's choice and were not in the employ of Defendant. At no time was it shown that Defendant or its agents ever represented to Plaintiff what her condition was.

Our Supreme Court has enunciated the rule of law governing the case at bar in Houston and T. C. Ry. Co. v. McCarty (1901) 94 Tex. 298, 60 S.W. 429 as follows:

"The rule in such cases is that 'voluntary settlements are so favored, that if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge or means of obtaining knowledge concerning the circumstances involving those rights, and there is no fraud, misrepresentation, concealment, or other misleading incident, a compromise into which they have voluntarily entered must stand and be enforced, although the final issue may be different from that which was anticipated, and although the disposition made by the parties in their agreement may not be that which the court would have decreed, had the controversy been brought before it for decision.'" * * * That where a party who has a claim against another for personal injuries agrees upon a settlement of his claim, and accepts a sum of money or other thing of value in settlement of such claim, he is, in the absence of fraud or concealment, concluded by the settlement, is a proposition sustained, as we think, by the great weight, if not by an unbroken line of authority."

Also see Inter-Ocean Casualty Co. v. Johnston (Tex.Com.App.1934) 123 Tex. 592, 72 S.W.2d 583, opinion adopted by the Supreme Court.

The following cases hold that a compromise settlement agreement in a workmen's compensation case cannot be set aside on the ground of mutual mistake as to the nature and extent of Plaintiff's injuries: Estes v. Hartford Accident & Indemnity Co. (El Paso Tex.Civ.App.1932) 46 S.W. 2d 413, error refused; Texas Employers Ins. Ass'n v. Watkins (Fort Worth Tex. Civ.App.1936) 90 S.W.2d 622, error dismissed 130 Tex. 383, 110 S.W.2d 1153; and Great American Indemnity Co. v. Blakey (San Antonio Tex.Civ.App.1937) 107 S.W.2d 1002, error dismissed.

Stated differently, a compromise settlement agreement in a workmen's compensation case can only be set aside for fraudulent representations relied upon by the employee, made by authorized agents of the insurer. Bullock v. Texas Employers Ins. Ass'n (Dallas Tex.Civ.App.1952) 254 S.W. 2d 554, error refused.

In the case at bar, the sole ground asserted in the court's charge to the jury for setting aside the agreement was the mutual mistake on the part of Plaintiff and Defendant as to the real condition of Plaintiff's neck at the time the agreement was executed, the elements of which the jury found in favor of Plaintiff. Since this ground (mutual mistake as to the nature and extent of Plaintiff's injuries) was insufficient as a matter of law to set aside the agreement, the trial court acted properly in disregarding Special Issues 12 through 18 and in entering judgment that Plaintiff take nothing.

Judgment of the trial court is accordingly affirmed.

Affirmed.