**Ramona RUSSO, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MON/VAL RESOURCES, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 20, 2000.
Decided June 27, 2000.

David J. Flower, Somerset, for petitioner.

Roy F. Walters, Jr., Pittsburgh, for respondent.

Before DOYLE, President Judge, FRIEDMAN, Judge, MIRARCHI, Jr., Senior Judge.

FRIEDMAN, Judge.

Ramona Russo (Claimant) appeals from an order of the Workers' Compensation Appeal Board (WCAB) which affirmed a decision of a workers' compensation judge (WJC) denying Claimant's petition to set aside a commutation and reinstate total disability benefits (Petition). We affirm.

On December 20, 1986, Claimant sustained an injury to her neck and right shoulder while working for Mon/Val Resources, Inc. (Employer). As a result of her injury, Claimant received total disability benefits pursuant to a notice of compensation payable. In November 1990, Claimant and Employer entered into a supplemental agreement and stipulation of facts resolving Claimant's workers' compensation claim through a commutation of benefits, whereby Claimant received a lump sum payment of $65,000.[1]

On February 16, 1993, Claimant filed the instant Petition, alleging: (1) that the supplemental agreement was based upon a mutual mistake of fact, specifically, the parties mistakenly believed that Claimant had multiple sclerosis; and (2) that the nature and character of Claimant's disability had changed. After several hearings before a WCJ, the WCJ concluded that Claimant failed to meet her burden of establishing a change in the nature and character of her condition and denied Claimant's Petition. The WCAB affirmed, and Claimant appealed to this court.

On appeal, Claimant argued that the WCJ erred by failing to address her alternative ground for reinstatement, that is, that the commutation was based upon a mutual mistake in the supplemental agreement. We agreed,[2] and we remanded to the WCJ "for findings of fact and conclusions of law on the issue of whether the supplemental agreement contains a mutual material mistake."[3] See Russo v. Workers' Compensation Appeal Board (Mon/Val Resources, Inc.), (No. 2767 C.D.1996, filed February 28, 1997) (Russo I).

On remand to the WCJ, the parties did not dispute that Claimant had been misdiagnosed with multiple sclerosis prior to the commutation of her benefits.[4] However, because neither the supplemental agreement nor the stipulation of facts mentioned anything about Claimant's mistaken diagnosis of multiple sclerosis, (See O.R., Supplemental Agreement and Stipulation of Facts), the issue before the WCJ was whether Claimant based the decision to commute her benefits upon the misdiagnosis.

In this regard, Claimant testified that, prior to executing the supplemental agree-

---

1. Pursuant to the notice of compensation payable, Claimant received weekly benefits of $339.71, based upon an average weekly wage of $509.56. Under the stipulation of facts and supplemental agreement, the parties agreed that Claimant was able to return to work on September 25, 1990 at a rate of $314.56, a $195.00 loss of earnings. The supplemental agreement provided that Claimant was entitled to partial disability benefits at a rate of $130.00 per week for 500 weeks, for a total of $65,000. Claimant filed a commutation petition requesting that her partial disability benefits be commuted and paid to her in one lump sum.

2. We noted that reinstatement of benefits is proper where the commutation was granted on the basis of an incorrect supplemental agreement. See Russo v. Workers' Compensation Appeal Board (Mon/Val Resources, Inc.), (No. 2767 C.D.1996, filed February 28, 1997) (Russo I) (citing Cahill v. Workmen's Compensation Appeal Board (North American Coal Corp.), 137 Pa.Cmwlth. 442, 586 A.2d 522 (1991), rev'd on other grounds, 533 Pa. 223, 621 A.2d 101 (1993)).

3. When we issued our decision in Russo I, the supplemental agreement and stipulation of facts had not been made part of the record.

4. (See WCJ's Conclusions of Law, No. 2; 12/16/97 hearing, N.T. at 64.)

ment, her attorney at the time, William Schrimpf,[5] informed her that her multiple sclerosis would lead to the termination of her benefits. (WCJ's Findings of Fact, No. 8.) Claimant also stated that she told her attorney that she did not want to sign the agreement because she did not believe that she had multiple sclerosis. (WCJ's Findings of Fact, No. 9.) Claimant further testified that Schrimpf and Employer's attorney at the time, Frank Pipak, reminded her that she had a young daughter and asked her what she would do when her husband was not working and her benefit payments ceased.[6] (WCJ's Findings of Fact, No. 9.) Claimant's husband also testified that Claimant's diagnosis affected her decision to enter into the supplemental agreement. (WCJ's Findings of Fact, No. 15.)

In opposition to Claimant's petition, Employer presented the testimony of Schrimpf and Pipak. Schrimpf testified that Claimant's multiple sclerosis never played a part in his decision to advise Claimant to commute her benefits and that he never told Claimant that her alleged condition would cause her benefits to terminate.[7] (WCJ's Findings of Fact, No. 11.) Schrimpf related that, on the day of the commutation, there was no sign that

5. Claimant obtained new counsel since the commutation of her benefits.

6. Claimant filed a disciplinary complaint against Schrimpf; however, after an investigation by the Disciplinary Board, the charge was dropped. (WCJ's Findings of Fact, No. 11.)

7. The WCJ made the following finding regarding the factors that Schrimpf considered in advising Claimant to commute her benefits: Mr. Schrimpf had met with [Claimant] and her husband several months before the commutation and outlined in detail the pros and cons of possible settlement. Mr. Schrimpf said [Claimant] had many problems that were not work-related and there were instances where [Claimant] was reporting to two separate medical facilities and securing drugs at both locations. He was concerned as to how these factors would affect the employee's credibility and this factored into his assessment of the case. As to the possible diagnosis of multi-

Claimant was reluctant to enter into the agreement. (WCJ's Findings of Fact, No. 12.) Pipak also denied Claimant's allegation that he and Schrimpf told her that she should sign the agreement because of her child. (WCJ's Findings of Fact, No. 13.)

After considering all of the evidence, the WCJ dismissed Claimant's Petition for a second time. In dismissing the Petition, the WCJ made the following relevant conclusion:

> [Claimant] failed to meet her burden of proof to establish by competent and credible evidence that there has been a mutual material mistake of fact which was relied on and in [sic] the commutation of [Claimant's] benefits. There was a mistake that both parties agree to. Namely, the mistake is that [Claimant] was supposedly diagnosed with multiple sclerosis when both parties agree that she did not have it. However, the testimony presented does not establish that this mistake in diagnosis was relied upon to enter into the commutation of benefits. The inconsistent testimony presented by [Claimant] and by her husband [does] not meet her burden of proof.[8] In addition [Claimant] does not

ple sclerosis Mr. Schrimpf stated that he never felt that Dr. Talbott [who diagnosed Claimant with multiple sclerosis] had come out and said definitively ... [that Claimant] had multiple sclerosis.
(WCJ's Findings of Fact, No. 11.)

8. The WCJ has complete fact-finding discretion as to the credibility of witnesses and the evidentiary weight, and such findings will not be disturbed if supported by substantial evidence. *See Fulton v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 707 A.2d 579 (Pa.Cmwlth.1998). In making his credibility determinations, the WCJ noted that Claimant's testimony was inconsistent regarding whether the diagnosis of multiple sclerosis had something to do with her decision to commute her benefits. (WCJ's Findings of Fact, No. 19.) The WCJ also found that Claimant's husband's testimony was similarly inconsistent and contradictory. (WCJ's Findings of Fact, No. 20.) Conversely, the WCJ found Schrimpf's and Pipak's versions of

establish that there was any mutual material mistake of fact regarding the reasons for the commutation. The testimony tended to establish that [Employer] and [Claimant] based their decision to commute on factors other than the supposed multiple sclerosis.

(WCJ's Conclusions of Law, No. 2.) The WCAB affirmed, and Claimant again appeals to this court.[9]

█ Initially, we note that section 407 of the Workers' Compensation Act[10] (Act) provides that "any agreement ... permitting a commutation of payments contrary to the provisions of this act ... shall be wholly null and void...." A supplemental agreement may be set aside pursuant to section 413 of the Act if the supplemental agreement is "incorrect in any material respect." 77 P.S. § 771. With a petition to review a commutation agreement under section 413 of the Act, the WCJ or the WCAB must determine whether a mistake of fact or law was made when the commutation agreement was executed. *Hartner v. Workmen's Compensation Appeal Board (Phillips Mine & Mill, Inc.)*, 146 Pa.Cmwlth. 167, 604 A.2d 1204, *appeal denied*, 531 Pa. 662, 613 A.2d 1210 (1992). The burden is on the party seeking to set aside the commutation agreement to prove that the agreement was false or materially incorrect. *Fulton v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 707 A.2d 579 (Pa.Cmwlth. 1998).

Claimant argues that the WCAB and the WCJ erred in "incorrectly applying those legal standards set forth by" this court in

Russo I. (*See* Claimant's brief at 16.) Specifically, Claimant asserts that the WCJ failed to comply with this court's decision in *Russo I* because the WCJ found that the parties mistakenly believed that Claimant had multiple sclerosis but, nevertheless, denied Claimant's petition because Claimant did not rely on this misdiagnosis in deciding to commute her benefits. Claimant's argument misconstrues our decision in *Russo I*.

█ In *Russo I*, the issue on remand to the WCJ was narrow: "whether the supplemental agreement *contained* a mutual material mistake." *See Russo I*, slip op. at 4 (emphasis added). Clearly, it did not. Indeed, the supplemental agreement and stipulation of facts, not provided to this court in *Russo I* but now made part of the record, do not even mention the diagnosis of multiple sclerosis. Further, based upon the credible testimony of Schrimpf, the WCJ determined that Claimant's misdiagnosis of multiple sclerosis was not a consideration in settling Claimant's case.[11] (WCJ's Findings of Fact, Nos. 12, 21.) Thus, the WCJ did not err in holding that the supplemental agreement did not contain, nor was it based upon, a material mutual mistake. Because the supplemental agreement was not "incorrect in any material respect," 77 P.S. § 771, we affirm.

### O R D E R

AND NOW, this 27th day of June, 2000, the order of the Workers' Compensation

the commutation negotiations credible in light of the inconsistencies in the testimony of Claimant and her husband. (WCJ's Findings of Fact, No. 21.)

9. Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

10. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 731.

11. Although Claimant argues that the supplemental agreement was *based upon* the mistaken diagnosis, we point out that the WCJ rejected her testimony and her husband's testimony on that issue and, instead, believed the testimony of Shrimpf and Pipak that her diagnosis of multiple sclerosis was not the basis upon which Claimant's benefits were commuted. We may not disturb those credibility determinations on appeal.

Appeal Board, dated December 30, 1999, is hereby affirmed.