Marcella STILES, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (DEPARTMENT OF PUBLIC WELFARE), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 9, 2004.

Decided July 13, 2004.

David M. Axinn, Hollidaysburg, for petitioner.

Laverne M. Kovacs, Altoona, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and COHN, Judge.

OPINION BY Judge COHN.

Before the Court is the question of whether the efficacy of a Workers' Compensation Compromise and Release (C & R) Agreement can be attacked on the basis that a claimant was mentally incompetent to comprehend what she was agreeing to or whether such an attack is precluded by the doctrine of collateral estoppel.[1] This is an issue of first impression, and has far-reaching consequences. Marcella Stiles (Claimant) appeals an order of the Workers' Compensation Appeal Board (WCAB) that upheld the order of Workers' Compensation Judge (WCJ) Charles A. Getty, dismissing the petition to set aside on the basis that the litigation was precluded by the doctrine of collateral estoppel.

The pertinent facts are as follows. On October 7, 1995, while employed by the

---

1. The record discloses that the terms collateral estoppel and *res judicata* are used interchangeably by the parties. They are not precisely the same thing. *See Township of* *McCandless v. McCarthy,* 7 Pa.Cmwlth. 611, 300 A.2d 815, 820 (1973). Collateral estoppel is the term that properly applies and we will use it here.

Department of Public Welfare (Employer), Claimant sustained a work-related injury described as "post-concussion syndrome." As a result, she received total disability benefits pursuant to a Notice of Compensation Payable (NCP), dated October 24, 1995, with subsequent periods of partial and total disability pursuant to various supplemental agreements.

In April of 2000, Claimant's then attorney filed a petition on Claimant's behalf, seeking approval of a "Compromise and Release Agreement by Stipulation pursuant to Section 449 of the Workers' Compensation Act" (Act).[2] This proceeding was held before WCJ Francis J. Desimone. The C & R Agreement, which was approved by WCJ Desimone, was signed by Claimant, Employer, and their respective counsel. It provided that Employer would pay Claimant one final indemnity payment of $100,000.00, representing all of Claimant's future wage loss claims attributable to her October 7, 1995 work injury, but that Employer would continue to pay all

reasonable and necessary medical bills related to that injury.[3] (O.R., C & R Agreement at para. 8, 10; WCJ Desimone's Findings of Fact 2.)

At the C & R Agreement hearing, Claimant was questioned by her counsel, and by Employer's counsel with respect to the C & R Agreement. Responding to questions posed, Claimant agreed that she understood and accepted the terms of the C & R Agreement and that she had been fairly represented by her attorney. WCJ Desimone credited Claimant's testimony and specifically found that Claimant "understands the full legal significance of the Compromise and Release Agreement which she signed." (WCJ Desimone's Findings of Fact 4.) Accordingly, he approved the C & R Agreement on June 2, 2000. Thereafter, Employer paid Claimant the settlement amount of $100,000.00.

Claimant did not appeal from WCJ Desimone's order approving the C & R Agreement. However, in August of 2001, she

---

2. Act of June 2, 1915, P.L. 736, *as amended,* added by Section 22 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.5.

Section 449 of the Act provides, in relevant part:
(a) Nothing in this act shall impair the right of the parties interested to compromise and release, subject to the provisions herein contained, any and all liability which is claimed to exist under this act on account of injury or death.
(b) Upon or after filing a petition, the employer or insurer may submit the proposed compromise and release by stipulation signed by both parties to the workers' compensation judge for approval. The workers' compensation judge shall consider the petition and the proposed agreement in open hearing and shall render a decision. *The workers' compensation judge shall not approve any compromise and release agreement unless he first determines that the claimant understands the full legal significance of the agreement.* The agreement must be explicit with regard to the payment, if any, of reasonable, necessary and related medical ex-

penses. Hearings on the issue of a compromise and release shall be expedited by the department, and the decision shall be issued within thirty days.
(c) Every compromise and release by stipulation shall be in writing and duly executed, and the signature of the employe, widow or widower or dependent shall be attested to by two witnesses or acknowledged before a notary public. *The document shall specify:*

. . .

(11) *the fact that the claimant is represented by an attorney of his or her own choosing* or that the claimant has been specifically informed of the right to representation by an attorney of his or her own choosing and has declined such representation. 77 P.S. § 1000.5 (emphasis added).

3. We note that, in its opinion of June 6, 2003, the WCAB incorrectly states that, under the C & R Agreement, "Claimant had waived her right to future compensation (indemnity *and medical benefits* ) in exchange for a lump sum payment of $100,000.00." (WCAB op. at 3) (emphasis added).

filed a petition to set aside final receipt and reinstate compensation, in which she alleged that, "[a]t the time [Claimant] entered into her Compromise and Release, she was suffering from severe psychological, psychiatric and physical injuries which gave her post-traumatic stress syndrome and [she] did not understand the economic value of her claim. The agreement was totally inadequate under the circumstances and should be set aside and benefits reinstated." Employer filed a timely answer generally denying the allegations of Claimant's petition and, more specifically, averring that "Claimant received the sum of $100,000 upon approval of a Compromise and Release Agreement issued by [WCJ] Desimone on June 2, 2000. Accordingly, benefits cannot be reinstated."

The petition was assigned to WCJ Getty, who conducted a hearing on September 20, 2001. Claimant's counsel presented no evidence at that hearing but, instead, requested that Claimant's testimony be deferred until counsel could schedule a deposition from Dr. Michelle R. Arbitell, Claimant's treating psychologist. (O.R., N.T. at 4–5.) Employer's counsel submitted a copy of WCJ Desimone's June 2, 2000, decision approving the C & R Agreement, as well as a signed copy of the C & R Agreement. WCJ Getty admitted both submissions into the record as Judge's Exhibits # 1 and # 2, respectively. (N.T. at 7–8; WCJ Getty's Finding of Fact 3.) WCJ Getty then marked the matter continued for the deposition of Dr. Arbitell. (N.T. at 9.)

Shortly thereafter, by correspondence dated September 27, 2001, Employer's counsel moved for dismissal of Claimant's petition on the ground that the issue was controlled by the doctrine of collateral es-

toppel. In the motion to dismiss, Employer's counsel noted that, in the decision approving the C & R Agreement, WCJ Desimone had specifically found that Claimant understood the full legal significance of the C & R Agreement, which she had signed. Because Claimant never appealed from that decision, Employer's counsel asserted that Claimant's petition to set aside, in which she sought to prove that she did not understand the full legal significance of the C & R Agreement, must be dismissed. Both parties submitted legal briefs regarding application of the collateral estoppel defense. After considering the arguments made therein, WCJ Getty concluded that Employer's motion to dismiss should be granted due to WCJ Desimone's finding that Claimant understood her decision to proceed and execute the C & R Agreement and Claimant's failure to appeal from that decision. (WCJ Getty's Finding of Fact 5; WCJ Getty's Conclusion of Law 3.) Claimant appealed the WCJ's dismissal order to the WCAB, which affirmed.

Claimant now petitions this Court for review,[4] arguing that Employer waived the right to raise the defense of collateral estoppel by failing to include it in its answer to Claimant's petition. Alternatively, Claimant argues that, even if this defense were properly raised, the doctrine of collateral estoppel does not apply here because Claimant did not have a full and fair opportunity to litigate in the underlying C & R Agreement proceeding before WCJ Desimone. Her specific objections to that hearing are that (1) she was not represented by counsel of her own choosing and (2) she was not mentally capable of exercising independent judgment. Claimant reasons that because the C & R Agreement proce-

---

4. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

dures suffered from these alleged deficiencies, she should have been provided an opportunity, in the context of her petition to set aside, to present evidence in support of her allegations of mental incapacity.

 Before addressing Claimant's arguments, we note that, although Claimant styled her pleading as a petition to set aside final receipt, this was not the proper means by which to request the relief she sought. This is because at the time a final receipt is signed, the parties acknowledge that the claimant is no longer disabled from the work-related injury. Therefore, a claimant seeking to set aside a final receipt must demonstrate by sufficient, competent, credible evidence that all disability attributable to his work-related injury had not ceased at the time of signing. *Hartner v. Workmen's Compensation Appeal Board (Phillips Mine & Mill, Inc.),* 146 Pa.Cmwlth.167, 604 A.2d 1204 (1992), *petition for allowance of appeal denied,* 531 Pa. 662, 613 A.2d 1210 (1992). In this case, however, when Employer and Claimant entered into the C & R Agreement, they agreed that Claimant remained totally disabled due, at least in part, to Claimant's 1995 work injury. (O.R., C & R at para. 6, 16.) Thus, the circumstances here are not within the ambit of a petition to set aside. However, relief may be granted under a section of the Act different from that invoked by Claimant, provided that relief is appropriate based on the evidence presented. *Hartner.*

 What Claimant actually seeks here is to set aside the C & R Agreement approved by WCJ Desimone and, thereby, reinstate her disability benefits.[5] In an effort to secure this relief, Claimant asserts that, contrary to representations in the Employee's Certification portion of the C & R Agreement and to WCJ Desimone's Findings of Fact 4, she did not understand the full legal significance of the C & R Agreement at the time she signed that document. Moreover, Claimant asserts that, contrary to her signed acknowledgement in the Employee Certification portion of the C & R Agreement that she was represented by an attorney of her own choosing as required under Section 449(c)(11) of the Act, 77 P.S. § 1000.5(c)(11), that was not, in fact, the case. In actuality then, Claimant's petition is in the nature of a petition to set aside the C & R Agreement pursuant to Section 413(a) of the Act, which gives the WCJ authority to set aside an agreement of the parties "if it be proved that such . . . agreement was in any material respect incorrect." 77 P.S. § 771(a).

 With this in mind, we consider whether Claimant's petition was properly dismissed based upon collateral estoppel.[6]

---

5. Claimant concedes that Employer would be entitled to a credit against future benefits in the amount of the $100,000.00 already paid to Claimant under the C & R Agreement. (Claimant's brief at 9, n. 2.)

6. Although Claimant argues that this issue was not raised in Employer's answer, we disagree. Despite the fact that the words "collateral estoppel" were not used by Employer in its answer to the petition to set aside, as noted earlier, Employer did state in its answer, "The Claimant received the sum of $100,000 upon approval of a Compromise and Release Agreement issued by Workers' Compensation Judge Desimone on June 2, 2000. Accordingly, benefits cannot be reinstated." WCJ Getty found that Employer's defense was *in the nature of* collateral estoppel, and that it was "effectively raised" in Employer's answer to the petition because it specifically referenced WCJ Desimone's prior adjudication. (WCJ Getty's Findings of Fact 2) (emphasis added). We agree. However, even if this defense were not raised in the answer, we are aware of nothing in the law that requires it to have been raised there, provided it was raised before the WCJ. Certainly, it was so raised in the motion to dismiss. Accordingly, we disagree that the issue was waived.

The doctrine of collateral estoppel forecloses re-litigation of an issue of law or fact that has been finally decided when the following factors are demonstrated: (1) the legal or factual issues are identical; (2) they were actually litigated; (3) they were essential to the judgment; and (4) they were material to the adjudication. *Township of McCandless v. McCarthy*, 7 Pa. Cmwlth. 611, 300 A.2d 815 (1973). The party against whom the plea is asserted must have been a party, or in privity to a party, in the prior action and must have had a full and fair opportunity to litigate the issue in question. *Id.*

Claimant argues that collateral estoppel does not apply to the question of her mental competence because that issue was not actually litigated in the proceeding before WCJ Desimone. We disagree. Under Section 449(b) of the Act, the WCJ presiding over a Compromise and Release Agreement hearing is mandated to determine that "the claimant understands the full legal significance of the agreement." Inherent in that responsibility is a requirement that the WCJ determine that the claimant is mentally competent to comprehend the legal ramifications of entering into such an agreement. This is *exactly* what WCJ Desimone did. In his Findings of Fact 4, WCJ Desimone specifically found that Claimant "understands the full legal significance of the Compromise and Release Agreement which she signed." Thus, Claimant's mental competence *was* an issue actually litigated at the hearing before WCJ Desimone. Based on this same reasoning, Claimant's mental competence was essential to the judgment approving the C & R Agreement and material to the adjudication that did so.

Therefore, collateral estoppel does preclude re-litigation of this question.

The next issue is whether collateral estoppel bars Claimant's contention that she was not represented by counsel of her choice. The record reflects that the C & R Agreement included a section entitled "Employee's Certification," which Claimant admitted she signed. Paragraph 5 of that section of the C & R Agreement states, "I have been represented by an attorney of my own choosing during this case. My attorney has explained to me the content of this agreement and its effects upon my rights." This provision was initialed by Claimant. Additionally, the record shows that at the C & R Agreement hearing Claimant was specifically asked whether she was satisfied with her attorney's representation of her, to which she replied, "Yes." (N.T. 11–12.) Based on this evidence, we hold that she was precluded under collateral estoppel from re-litigating the issue of whether she was represented by counsel of her choice.[7]

Our decision that the doctrine of collateral estoppel properly applies here is supported by strong public policy favoring voluntary settlements and finality. The importance of giving effect to the finality of a Compromise and Release settlement has been recognized by other courts. In fact, the Supreme Court of Texas *rejected the notion that even a mutual mistake of fact* could justify opening a Compromise and Release settlement in a workers' compensation case, observing:

> [V]oluntary settlements are so favored, that if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge or means

7. Claimant also asserts that, at the hearing on the petition to set aside, she had no opportunity to submit expert medical evidence of her medical condition. However, although her attorney made a motion to continue the hear- ing for that purpose, and although the motion to continue the hearing was granted, the disposition of the motion to dismiss rendered her proposed medical evidence unnecessary as a matter of law.

of obtaining knowledge concerning the circumstances involving those rights, and there is no fraud, misrepresentation, concealment, or other misleading incident, a compromise into which they have voluntarily entered must stand and be enforced, although the final issue may be different from that which was anticipated, and although the disposition made by the parties in their agreement may not be that which the court would have decreed, had the controversy been brought before it for decision.

*Mullens v. Texas Employers' Insurance Association,* 507 S.W.2d 317, 320 (Tex.Civ. App.1974) (quoting *Houston and Texas Central Railroad Company v. McCarty,* 94 Tex. 298, 60 S.W. 429 (Tex.1901), *overruled on other grounds in Williams v. Glash,* 789 S.W.2d 261 (Tex.1990)).[8] Unlike in Texas, this Court has declined to apply the same level of strictness. Rather, we have permitted a C & R Agreement to be set aside in a situation where we perceived a mutual mistake of fact. *See North Penn Sanitation Inc. v. Workers' Compensation Appeal Board (Dillard),* 850 A.2d 795 (Pa. Cmwlth.2004). In *North Penn,* we stated that, "At common law, a compromise and

release agreement can be set aside upon a clear showing of fraud, deception, duress or mutual mistake.... We see no reason why the test for setting aside releases at common law should not be applied to workers' compensation cases." (Op., p. 798).[9,10] In addition, we have stated, "we believe that the legislature intended that a C & R should be on equal footing with civil settlements, which are based on a public policy that encourages settlements and stresses finality." *Stroehmann Bakeries v. Workers' Compensation Appeal Board (Plouse),* 768 A.2d 1193, 1196 (Pa.Cmwlth. 2001).[11] These important public policy concerns, *i.e.,* encouraging settlements and promoting finality, reinforce the basis for our holding here.

Accordingly, having determined that the doctrine of collateral estoppel did prevent the setting aside of the C & R Agreement, and that there are strong policy reasons that militate against allowing persons to disavow such agreements, absent circumstances such as fraud, misrepresentation, concealment, or mutual mistake of fact, which are not present here, we affirm the order of the Board, upholding the dismissal of Claimant's petition.

---

**8.** The case *sub judice* contains no such allegations of fraud, misrepresentation or concealment.

**9.** We further observed that, "in order for a mistake to constitute a basis for invalidating a compromise and release, the mistake must be a material one and in existence at the time the release was executed." (Op., p. 800.)

**10.** In *North Penn,* the claimant's injuries included work-related blindness. The attorney representing him at the C & R Agreement hearing was the insurer's attorney and the C & R Agreement was never read to the claimant. Moreover, the Agreement did not include his blindness in the description of his work-related injuries. This situation was further compounded by the fact that the WCJ was *unaware* of the claimant's blindness and so did not inquire at the hearing whether anyone had read the document to the claimant. Claimant's alleged mental incapacity

here does not constitute such a mutual mistake of fact.

**11.** We observe, in addition, that noted commentators on this Commonwealth's Workers' Compensation jurisprudence also stress the importance of finality. Torrey and Greenberg have observed that, while the Workers' Compensation Act is liberal in permitting review of notices of compensation payable and agreements, it is silent on the issue of opening Compromise and Release settlements. Torrey and Greenberg, Pennsylvania Workers' Compensation: Law & Practice, §§ 11:203, 15:111 (2002). In analyzing this issue, the authors suggest that "a pervasive interpretive guideline in the [Compromise and Release] context must be that *finality,* whenever just and reasonable, attend compensation settlements." *Id.* (Emphasis in original.)

### ORDER

NOW, July 13, 2004, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

### DISSENTING OPINION BY Judge FRIEDMAN.

In this issue of first impression, the majority determines that a claimant who suffers from mental impairment may not petition for review of a Workers' Compensation Compromise and Release (C & R) Agreement on grounds that she was incapable of understanding its ramifications because the doctrine of collateral estoppel forecloses this relief to any such claimant as a matter of law by virtue of the very finding she seeks to have reviewed. I believe that such a result is both absurd and unjust; therefore, I must respectfully dissent.

In this case, Marcella Stiles (Claimant), while employed by the Department of Public Welfare (Employer), sustained a work-related injury described as "post-concussion syndrome." After Claimant went through various periods of total and partial disability, her then attorney filed a petition on Claimant's behalf, seeking approval of a C & R Agreement pursuant to section 449 of the Workers' Compensation Act.[1] At a hearing on the matter, Claimant testified that she accepted the terms of the C & R Agreement and had been fairly represented by her attorney. Crediting this testimony, WCJ Francis J. Desimone (WCJ Desimone) found that Claimant understood the full legal significance of the C & R Agreement which she signed,[2] (WCJ Desimone's Findings of Fact, No. 4), and approved the C & R Agreement.

Claimant subsequently filed a petition (Petition) to reinstate her disability benefits, alleging that, "[a]t the time [Claimant] entered into her Compromise and Release, she was suffering from severe psychological, psychiatric and physical injuries which gave her post-traumatic stress syndrome and [she] did not understand the economic value of her claim. The agreement was totally inadequate under the circumstances and should be set aside and benefits reinstated." (R.R. at 18.)

Claimant's Petition was assigned to WCJ Charles A. Getty (WCJ Getty), who initially continued the matter so that Claimant's counsel could schedule the deposition of Claimant's treating psychologist. However, shortly thereafter, Employer's counsel moved to dismiss Claimant's Petition; Employer contended that the issue of whether Claimant understood the import of the C & R Agreement already had been decided by WCJ Desimone, and, because Claimant did not appeal from that decision, the doctrine of collateral estoppel now precluded Claimant from revisiting the question. After considering the parties' positions,[3] WCJ Getty agreed with Em-

1. Act of June 2, 1915, P.L. 736, *as amended, added by,* Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.5.

2. Section 449 of the Act provides, in relevant part, that the WCJ shall not approve any C & R Agreement unless he first determines that the claimant understands the Agreement's full legal significance. 77 P.S. § 1000.5(b). In addition, the C & R Agreement must specify that the claimant is represented by *an attorney of his or her own choosing* or that the claimant has been specifically informed of the

right to representation by an attorney of his or her own choosing and has declined such representation. 77 P.S. § 1000.5(c)(11).

3. In her brief to WCJ Getty, Claimant recounted the significant mental impairments she suffers as a result of her work-related injury, and she maintained that she acquiesced to the C & R Agreement only because Employer's insurer pressured her to accept a settlement of the claim. Claimant then argued that, because Employer failed to raise the issue of collateral estoppel in its

ployer and dismissed Claimant's petition. The WCAB affirmed, and now the majority also affirms. I cannot agree with such a result.

As the majority correctly states, Claimant's Petition actually is in the nature of a petition to set aside the C & R Agreement pursuant to section 413(a) of the Act, 77 P.S. § 771, which gives the WCJ authority to set aside an agreement of the parties *"if it be proved* that such ... agreement was in any material respect incorrect." 77 P.S. § 771 (emphasis added). The majority contends that it is with section 413(a) in mind that it considers whether Claimant's Petition was properly dismissed based on collateral estoppel, (majority op. at 8); yet, the majority invokes the doctrine of collateral estoppel to *deny Claimant the opportunity to prove* that she was mentally incapable of understanding the C & R Agreement and bases the decision solely

on WCJ Desimone's finding that Claimant did understand that Agreement. By so holding, I believe that the majority eliminates the possibility of relief which the legislature intended to provide through this section of the Act. Indeed, because a claimant seeking relief under section 413(a) of the Act, 77 P.S. § 771(a), is required to *prove* the existence of a material mistake of fact or law, it makes no sense to hold that a claimant is prevented from offering such proof by the very "fact" she has challenged.[4] Because such reasoning leads only to absurd results,[5] I cannot accept the majority's analysis in this case.

Moreover, I believe that the doctrine of collateral estoppel cannot be applied in this case because *the issue before WCJ Desimone* in the C & R Agreement approval proceeding under section 449 of the Act, 77 P.S. § 1000.5, *is not identical to the issue before WCJ Getty* in the proceeding to set aside that C & R Agreement under section 413(a) of the Act, 77 P.S. § 771.[6]

---

answer to the Petition, Employer had waived its right to assert that defense. Alternatively, Claimant argued that collateral estoppel did not apply because she did not have a full and fair opportunity to litigate in the proceeding before WCJ Desimone where (1) she was not represented by independent counsel and (2) her mental condition, of which Employer was aware, prevented her from understanding the significance of the proceeding or exercising a voluntary choice concerning the C & R Agreement. (R.R. at 21–27.)

4. Claimant asserts that, contrary to representations in the Employee's Certification portion of the C & R Agreement and to WCJ Desimone's Findings of Fact, No. 4, Claimant did not understand the full legal significance of the C & R Agreement at the time she signed that document. Moreover, Claimant asserts that, contrary to the C & R Agreement, she was not represented by independent counsel as required under section 449(c)(11) of the Act.

5. The WCAB's own decision reflects this absurdity. Although affirming WCJ Getty's dismissal of Claimant's Petition based on collateral estoppel, the WCAB nevertheless addressed the merits of Claimant's argument

that the C & R Agreement should be set aside because she did not understand the legal significance of the C & R Agreement and because she was not represented by an attorney of her own choosing at the C & R Agreement proceedings before WCJ Desimone. The WCAB determined that Claimant's argument was without merit. Pointing out that Claimant had not presented any evidence to support her allegations, the WCAB concluded that, *absent evidence to the contrary*, it had to presume that Claimant was represented by an attorney of her choice and that Employer was not guilty of any wrongdoing in connection with the C & R Agreement. However, in her appeal to the WCAB, and now to this court, Claimant specifically asserts that she was denied the opportunity to present evidence to prove her allegations.

6. Collateral estoppel forecloses relitigation of an issue of law or fact that has been finally decided when the following factors are demonstrated: (1) the legal or factual issues are identical; (2) they were actually litigated; (3) they were essential to the judgment; and (4) they were material to the adjudication. *Yonkers v. Donora Borough,* 702 A.2d 618 (Pa.

In order to have effect, a C & R agreement must be approved by a WCJ after the WCJ considers the proposed agreement in open hearing. Before deciding whether to approve any C & R agreement, the WCJ must first determine that the claimant understands the full legal significance of that agreement. 77 P.S. § 1000.5(b). Thus, in the proceeding to approve the C & R Agreement here, WCJ Desimone had to determine, based on the evidence presented at the C & R Approval hearing, whether Claimant understood the legal significance of the Agreement she signed. I believe this is *very different* than determining whether Claimant is mentally competent to attain such understanding.

Indeed, I take issue with the majority's statement that "[i]nherent in that responsibility is a requirement that the WCJ determine that the claimant is mentally competent ..." (Majority op. at 1124.) To the contrary, the WCJ lacks the medical training that would qualify him to make this specific determination. *See Southeastern Pennsylvania Transportation Authority v. Workers' Compensation Appeal Board (Herder),* 765 A.2d 414 (Pa.Cmwlth.2000), *appeal denied,* 566 Pa. 654, 781 A.2d 151 (2001) (stating that, while the claimant was qualified to testify concerning the decedent's emotions prior to death, a medical expert is required to testify regarding the decedent's alleged depression). Here, WCJ Desimone did not consider expert medical testimony on the subject of Claimant's mental competence; rather, WCJ Desimone heard Claimant state that she understood the terms of the C & R Agreement, and the WCJ made his finding based upon that statement. Thus, in the C & R Agreement approval proceeding, WCJ De-simone simply made a credibility determination; that determination was in no way an expression of the WCJ's expert medical opinion. WCJ Desimone's ruling was on Claimant's veracity, and Claimant's mental competence **was not** an issue actually litigated at the hearing before WCJ Desimone. Based on this same reasoning, Claimant's mental competence was not essential to the judgment approving the C & R Agreement nor material to the adjudication that did so.

However, with a petition to set aside an agreement under section 413(a) of the Act, the WCJ must determine whether a material mistake of fact or law was made when the agreement was executed. *Russo v. Workers' Compensation Appeal Board (Mon/Val Resources, Inc.),* 755 A.2d 94 (Pa.Cmwlth.2000), *appeal denied,* 565 Pa. 658, 771 A.2d 1292 (2001); *Hartner v. Workers' Compensation Appeal Board (Phillips Mine & Mill, Inc.),* 146 Pa. Cmwlth.167, 604 A.2d 1204, *appeal denied,* 531 Pa. 662, 613 A.2d 1210 (1992). Thus, in the proceeding to set aside the C & R Agreement, WCJ Getty was to determine, *based upon evidence presented at the set aside hearing,* whether the approved C & R Agreement contained or was based on information that was false or materially incorrect. It was in this hearing that the issue of Claimant's mental competence was to be litigated, and Claimant proposed to offer expert medical testimony on that issue for WCJ Getty to consider. Because the issue before WCJ Getty is different from that considered and ruled upon by WCJ Desimone, I would hold that WCJ Getty erred in dismissing Claimant's Petition based on collateral estoppel.

Cmwlth.1997). The party against whom the plea is asserted must have been a party, or in privity to a party, in the prior action and must have had a full and fair opportunity to litigate the issue in question. *Bortz v. Workmen's Compensation Appeal Board (Reznor Division of FL Industries),* 546 Pa. 77, 683 A.2d 259 (1996).

The majority acknowledges this court's recent decision in *North Penn Sanitation Inc. v. Workers' Compensation Appeal Board (Dillard)*, 850 A.2d 795, (Pa. Cmwlth.2004), in which we held that a C & R agreement may be set aside upon a clear showing of fraud, deception, duress or mutual mistake. However, the majority distinguishes *Dillard*, concluding that, while the claimant in that case was able to establish a mutual mistake of fact that warranted setting aside a C & R agreement, "Claimant's alleged mental incapacity here does not constitute such a mutual mistake of fact." (Majority op. at 11 n. 10.) I would submit that the majority's distinction is unfounded and its conclusion premature. Like Claimant here, the claimant in *Dillard* testified that he understood the terms of the C & R agreement, and the WCJ made a finding to that effect; however, unlike Claimant here, he was afforded an opportunity to present evidence in support of his claim that this finding was a mistake.[7]

7. In *Dillard*, the claimant received benefits for a work-related injury pursuant to a Notice of Compensation Payable, which designated the injury as a fractured skull, body contusions and lacerations. Approximately nine years later, the claimant and employer executed a C & R agreement whereby the claimant would receive $50,000 for the final settlement of all claims related to the designated work injury. At the hearing for approval of the C & R agreement, the claimant testified regarding his understanding of the document. Based on that testimony, *the WCJ specifically found that the claimant "understood the full legal significance and import of the [C & R a]greement,"* op. at 796(emphasis added), and issued an order approving the agreement.

Subsequently, the claimant filed a petition to set aside the C & R agreement on grounds that he had sustained work-related blindness that was not included in the C & R agreement's description of his injury. *At the hearing on the set aside petition,* Claimant acknowledged that he made no mention of his blindness at the prior hearing on the C & R agreement, and Claimant admitted that he responded "yes" when asked if he understood the terms of the C & R agreement. Nevertheless, the *claimant was allowed to testify and present medical evidence in support of his petition to set aside the agreement,* and the WCJ ultimately concluded that the C & R agreement was based upon a material mistake of fact and should be set aside.

The employer appealed, and, similar to Employer in the present case, argued that once a C & R is lawfully executed and approved pursuant to the Act, it is final, conclusive and binding upon the parties. We disagreed, concluding that "it would be illogical to give a WCJ authority to approve a compromise and release but no authority to rescind his action." Op. at 799. We then determined that the claimant successfully established that a mutual mistake of fact existed at the time the C & R agreement was executed, and, therefore, the WCJ did not err in setting aside that agreement. In doing so, we also stated:

> Additionally, we note that [the c]laimant's work-related blindness was not disclosed to WCJ Shayhorn. In approving the parties' [a]greement, WCJ Shayhorn relied upon the representation that [the c]laimant's injuries were fully disclosed, when they were not. Since WCJ Shayhorn was unaware of [the c]laimant's condition, it was impossible for the judge to ascertain whether [the c]laimant understood the full legal significance of the [a]greement. Given the nature of [the c]laimant's injury and his inability to read the [a]greement, [the c]laimant was at a unique disadvantage. This disadvantage was further compounded by the fact that [the c]laimant did not receive independent legal advice.... Under these circumstances, we cannot conclude that WCJ Devlin abused his discretion in setting aside the Agreement. In rendering this decision, we keep in mind that the Act is remedial in nature and intended to be liberally construed in favor of an injured employee, i.e., to effectuate its humanitarian purpose.

Op. at 801 (footnote and citation omitted).

Like the claimant in *Dillard*, Claimant here seeks to testify and present medical evidence to prove that, notwithstanding her testimony during the C & R Agreement approval hearing, she did not understand the full legal significance of the C & R Agreement at the time it was executed. Moreover, as in *Dillard*, Claimant asserts that Employer was aware of her mental incapacity but did not disclose this to WCJ Desimone. I can discern no distinction between whether that claimed lack of understanding results from a visual

As the party seeking to set aside the C & R Agreement, Claimant had the burden of proving that a material mistake of fact or law appeared in the C & R Agreement. *Russo.* At the hearing before WCJ Getty, Claimant sought to meet this burden through her own testimony and that of her treating psychologist. However, before Claimant was afforded the opportunity to do so, WCJ Getty dismissed Claimant's Petition based on collateral estoppel. As stated, I believe this was error. Accordingly, I would vacate the WCAB's order affirming WCJ Getty's decision and order, and I would remand to the WCAB to remand to the WCJ for an evidentiary hearing and determination on Claimant's Petition.

Judge SMITH–RIBNER joins in this dissent.

impairment, as in *Dillard,* or whether it is due to a mental impairment, as alleged by Claimant here. Indeed, I believe that if the majority's collateral estoppel analysis had been applied in *Dillard,* the claimant there would have been precluded from challenging the WCJ's finding that he understood the terms of the C & R agreement, a result at odds with the humanitarian purpose of the Act.