IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth N. Miller, :
                    Petitioner :
                              :
    v.                        :
                              :
State Employees Retirement System, :
                    Respondent : No. 1650 C.D. 2015

# **O R D E R**

NOW, May 24, 2016, upon consideration of petitioner's application for reargument/reconsideration and respondent's response in opposition thereto, the application is granted as to reconsideration, but denied to the extent it seeks reargument**.**

The opinion and order filed March 30, 2016 are withdrawn.

The attached opinion and order are entered.

MARY HANNAH LEAVITT,
President Judge

Kenneth N. Miller,
                Petitioner
 

        v.
 

State Employees Retirement
System,
              Respondent

:    No. 1650 C.D. 2015
:    Argued: March 7, 2016


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
JUDGE COVEY                     FILED: May 24, 2016


Kenneth N. Miller (Miller) petitions this Court for review of the Pennsylvania State Employees Retirement Board's (Board) August 12, 2015 order affirming the Pennsylvania State Employees Retirement System's (SERS) denial of his request to avoid the forfeiture of his pension as a result of pleading guilty to the federal crime of mail fraud on February 12, 2013. Miller presents two issues for this Court's review: (1) whether Miller's pension should have been forfeited because Miller was not an active judge or a state employee at the time of the incident which gave rise to the guilty plea; and (2) whether the forfeiture violates the Eighth and Fourteenth Amendments to the United States (U.S.) Constitution and Article I, Section 13 of the Pennsylvania Constitution due to the excessive nature of the forfeiture.

Miller became a member of SERS on January 5, 1970 by virtue of his employment as a member of the judiciary. Specifically, Miller was elected as a Magisterial District Judge. Miller executed an application for retirement benefits from SERS with an effective January 2, 2006 retirement date. At retirement, Miller

had accrued 38.2918 years of service, including military time. Miller elected to receive his retirement benefits under Option One and withdraw a lump sum equal to his total accumulated deductions under Option Four. Miller terminated his service as a Magisterial District Judge on the close of business on January 1, 2006. Subsequent to his retirement, the Delaware County Court's (Court) Administrative Office (Administrative Office) asked Miller if he would serve as a Senior Magisterial District Judge and Miller agreed to do so. Thus, pursuant to Rule 701(B) of the Pennsylvania Rules of Judicial Administration, Miller "file[d] the application for certification form with the Administrative Office, and upon approval, [was] eligible for judicial assignment."[1] Pa.R.J.A. No. 701(B); *see also* Reproduced Record (R.R.) at 17.

As a Senior Magisterial District Judge, the Court's Administrator would ask Miller if he would fill a vacancy on a particular district court for a specified period of time. Before Miller could fill the vacancy, the Administrative Office would process the paperwork to submit to the Pennsylvania Supreme Court, and if approved, the Supreme Court would issue an order assigning Miller to the bench as a Senior Magisterial District Judge. Miller would be compensated on a per diem basis for the period of time he actually served on the bench; however, he received no payment for the periods he was not authorized by the Pennsylvania Supreme Court to serve. Between March 20, 2006 and January 4, 2008, Miller sat as a Senior Magisterial District Judge in the Philadelphia Traffic Court for 177 days and was paid the gross amount of $36,293.77 for this per diem work. *See* Supplemental Reproduced Record (S.R.R.) at 31b-35b. Thereafter, the Administrative Office continued to appoint Miller as a Senior Magisterial District Judge from January 1, 2009 through December

_____

[1] Once approved, so long as Miller continued to accept the assignments and the Pennsylvania Supreme Court continued to appoint him, Miller would retain Senior Magisterial District Judge status until the end of the year in which he reached age 78 (December 31, 2014). *See* Pa.R.J.A. No. 701(A)(3).

2

31, 2012. *See* S.R.R. at 40b-64b (Supreme Court Orders dated December 12, 2008 through November 19, 2012).

In December 2011, Miller was at the Lima Regional Court in Delaware County, Pennsylvania on business connected with his position with the Delaware County District Justice Association. At that particular time, Miller was not sitting as a Senior Magisterial District Judge, but had been authorized to use the court facilities while working with the District Justice Association. During the December 2011 visit, one of the Court Clerks told Miller that her son had received a traffic citation issued from the Philadelphia Traffic Court, and asked if Miller knew anybody in the Traffic Court and wanted to know what she should do.

Miller testified at the administrative hearing that "[m]y response was listen, let me send it down, there's only one person that I communicate with there at all." R.R. at 23. Miller took the citation issued to the clerk's son, attached a sticky note with the words "please advise," and sent the citation and note to Philadelphia's Traffic Court's Director of Courtroom Operations William Hird (Hird) by regular mail. R.R. at 23. Miller had met Hird on the first day of Miller's assignment to Traffic Court and became acquainted with him while sitting as Senior Magisterial District Judge in Traffic Court. In February 2012, Miller followed up regarding the status of the citation with a telephone call to Hird. Hird informed Miller that he could tell the person who issued the citation that "it's canceled," meaning the Court Clerk's son did not have to appear because "[i]t was dismissed." R.R. at 25.

On January 31, 2013, the U.S. Attorney's Office filed a Criminal Information against Miller in the U.S. District Court for the Eastern District of Pennsylvania charging him with one count of mail fraud in violation of Section 1341 of the U.S. Code, 18 U.S.C. § 1341, and aiding and abetting in violation of Section 2(a) of the U.S. Code, 18 U.S.C. § 2(a). The Criminal Information alleged that Miller had exerted extrajudicial influence over the handling of the traffic citation he mailed

to Hird by requesting that the citation "be disposed of because of favoritism rather than that it be adjudicated on the merits of the case." S.R.R. at 2b. On February 4, 2013, the Pennsylvania Court of Judicial Discipline issued a per curiam order suspending Miller from any and all duties as a Senior Magisterial District Judge, and declaring him ineligible to accept further assignments as a Senior Magisterial District Judge.

On February 12, 2013, Miller pled guilty to one count of mail fraud in violation of 18 U.S.C. §1341 in the U.S. District Court for the Eastern District of Pennsylvania. By March 21, 2013 letter (forfeiture letter), SERS notified Miller that because of his guilty plea, his pension was forfeited effective February 12, 2013, pursuant to the Public Employee Pension Forfeiture Act, commonly known as Act 140.[2] At the time of the forfeiture letter, Miller was receiving a gross monthly retirement benefit of $4,126.52. On June 13, 2013, Miller reimbursed SERS for the overpayment of his monthly annuity for the period between February 12, 2013 and February 28, 2013. SERS returned to Miller the contributions he paid into SERS without interest.

On April 15, 2013, Miller filed an appeal from the forfeiture with the Board. SERS filed an answer to the appeal. On February 12, 2014, a hearing was held before a Hearing Officer. On February 17, 2015, the Hearing Officer issued a Proposed Adjudication and Order denying Miller's appeal and affirming the forfeiture. Miller filed exceptions to the Proposed Adjudication and Order with the Board to which SERS filed a response. On August 12, 2015, the Board accepted and adopted the Hearing Officer's Proposed Adjudication and Order, and denied Miller's appeal. Miller appealed to this Court.[3]

---

[2] Act of July 8, 1978, P.L. 752, 43 P.S. §§ 1311-1315.

[3] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is not in accordance with the law, whether local agency procedures have been violated, or

4

Miller first argues that his pension should not have been forfeited under Act 140 because he was not a judge or public official at the time of his misconduct which gave rise to his guilty plea. Both parties cite to *Shiomos v. Pennsylvania State Employees' Retirement Board*, 626 A.2d 158 (Pa. 1993), to support their positions.

Initially, Section 3 of Act 140 entitled "**Disqualification and forfeiture of benefits**" provides in relevant part:

> (a) Notwithstanding any other provision of law, no **public official or public employee** nor any beneficiary designated by such public official or public employee **shall be entitled to receive any retirement or other benefit** or payment of any kind except a return of the contribution paid into any pension fund without interest, **if such public official or public employee** is convicted or **pleads guilty** or no defense to any crime related to public office or public employment.
> . . . .
>
> (c) **Each time a public officer or public employee is** elected, **appointed**, promoted, or **otherwise changes a job** classification, **there is a termination and renewal of the contract for purposes of [Act 140]**.

43 P.S. § 1313 (text emphasis added). Section 2 of Act 140 defines "[**p**]**ublic official**" or "**public employee**" as:

> **Any person who is elected or appointed to any public office or employment including justices, judges and justices of the peace** and members of the General Assembly or who is acting or who has acted in behalf of the Commonwealth or a political subdivision or any agency thereof including but not limited to any person who has so acted **and is otherwise entitled to or is receiving retirement benefits whether that person is acting on a**

---

whether 'any findings of fact made by the agency and necessary to support its adjudication are not supported by substantial evidence.'

*Sandusky v. Pa. State Employees' Retirement Bd.,* 127 A.3d 34, 47 n.17 (Pa. Cmwlth. 2015) (quoting *Drennan v. City of Phila., Bd. of Pensions & Ret.,* 525 A.2d 1265, 1266 (Pa. Cmwlth. 1987)).

5

**permanent or temporary basis and whether or not compensated on a full or part-time basis.** This term shall not include independent contractors nor their employees or agents under contract to the Commonwealth or political subdivision nor shall it apply to any person performing tasks over which the Commonwealth or political subdivision has no legal right of control. **However, this term shall include all persons who are members of any retirement system funded in whole or in part by the Commonwealth or any political subdivision. For the purposes of [Act 140] such persons are deemed to be engaged in public employment.**

43 P.S. § 1312 (text emphasis added). The Pennsylvania Supreme Court held in *Shiomos*:

> As a reasonable condition of public employment, the employee reaffirms his commitment to perform his job with honesty and integrity every time he or she begins a new term of office, receives a promotion or appointment, or experiences a change in job classification; regardless of whether such public employment is on a full or part-time basis. With each appointment there is a renewal of the agreement to perform the term of public service without violating Act 140; an agreement which encompasses all that has gone before. Thus, whether or not a public employee's right to receive retirement benefits has vested, or he or she is in actual receipt of benefits, all previous accumulated rights to receive such benefits are subject to forfeiture by and through the 'renewed' agreement which is formed each time a person chooses to become a 'public official' as defined by [Section 2 of Act 140].

*Shiomos*, 626 A.2d at 162-63.

In the instant case, the Board found "[Miller] was a public official or a public employee under Act 140 by virtue of his membership in SERS, his receipt of retirement benefits from SERS, as well as his service as Magisterial District Judge and a Senior Magisterial District Judge." Board Dec. at 4. Specifically, the Board explained:

> [T]here is no connection between active service or active employment and the provisions of Act 140. [Miller] was and is a public official or public employee under Act 140

6

> due to his membership in SERS, his receipt of retirement benefits from SERS and his appointment as a Senior Magisterial District Judge. **There simply is no requirement that a public official or public employee be an active employee or official at the time of the commission of their crime**; therefore, his active or inactive status as a Senior Magisterial District Judge is irrelevant to any analysis under Act 140. [Miller's] exceptions in this regard and in this vein of reasoning are therefore overruled and dismissed.

Board Dec. at 5 (emphasis added). This reasoning, however, is contrary to *Sandusky v. Pennsylvania State Employees' Retirement Board,* 127 A.3d 34 (Pa. Cmwlth. 2015),[4] wherein a similar forfeiture under Act 140 was in issue. The *Sandusky* Court interpreted Act 140 as requiring the employee to be a public employee or public official **at the time of the misconduct** in order for Act 140 to apply. In *Sandusky*, this Court expressly held: "[B]ecause the Board had no reasonable basis whatsoever to find that [] Sandusky was an employee of [Penn State University (PSU)] when the underlying actions occurred, we reverse the Board's order, [and] reinstate the pension benefits[.]" *Id.* at 57.

Moreover, the Board's reliance on the last two sentences of the definition of **"[p]ublic official"** or **"public employee"** in Section 2 of Act 140 ("[h]owever, this term shall include all persons who are members of any retirement system funded in whole or in part by the Commonwealth or any political subdivision. For the purposes of [Act 140] such persons are deemed to be engaged in public employment.") is misplaced. Those sentences are in reference to the sentence preceding it regarding Act 140's inapplicability to independent contractors and clarifying [Act 140]'s applicability to certain individuals who are "deemed to be engaged in public employment[,]" not a catch all to include all annuitants in the definition of public official or public employee. 43 P.S. § 1312.

---

[4] Although the *Sandusky* case was not decided until after Miller filed his appeal with this Court, it was decided before the parties' briefs were due, but neither party cited to it.

7

This conclusion is further evidenced by the Board's erroneous reliance on *Public School Employees' Retirement Board v. Matthews,* 806 A.2d 971 (Pa. Cmwlth. 2002). The Board cites *Matthews* to support its position that all annuitants are public officials or public employees. However, the *Matthews* Court explained:

> We have been unable to uncover any case law in which the courts have dealt with **the precise issue of whether a public employee must forfeit retirement benefits that inured to her by virtue of one position of public employment when she commits a crime related to public employment while employed in another position of public employment**. However, Act 140 clearly and unambiguously requires a forfeiture of benefits of a public employee who commits a forfeitable offense. And, a statute must be read in accordance with its plain and common meaning when it is clear and unambiguous on its face. Furthermore, Act 140 contains no requirement that the pension benefits that are forfeited be necessarily connected to the public employment related to crime the public employee committed.

*Matthews*, 806 A.2d at 975 (citation omitted; emphasis added). Clearly, if *Matthews* stood for the proposition that all annuitants were included in the definition of public officials or public employees, the Court would not have had to address the issue of which employment applied. Notwithstanding, *Matthews* expressly held: "Act 140 clearly and unambiguously requires a forfeiture of benefits of a public employee who commits a forfeitable offense." *Matthews*, 806 A.2d at 975. Our research has disclosed no case law, nor does Act 140 support the Board's contention that the mere fact of being an annuitant makes one a public official or public employee. Thus, this argument cannot stand.

Given the above, we must determine whether Miller was a public official or public employee at the time he committed his crime. Miller argues that because the acts resulting in his guilty plea occurred on or about December 2011 through February 2012, during which time he was not serving as a Senior Magisterial District

8

Judge, nor had the Pennsylvania Supreme Court appointed him to serve in that capacity throughout that time period, he was not a public official or public employee. The record does not support this argument.

> The Board found:
>
> 5. Subsequent to his retirement, [Miller] was asked by the Delaware County Court Administrative Office if he would serve as a Senior Magisterial District Judge and [Miller] agreed to do so.
>
> 6. As a Senior Magisterial District Justice [sic], he would be asked by the Court's Administrator if he was interested in filling a vacancy on a particular court for a particular period of time. The Administrative Office would then process the paperwork and **the Supreme Court of Pennsylvania would issue an order appointing [Miller] to the bench as a Senior Magisterial District Judge.**

Proposed Adjudication and Order at 3 (emphasis added; citations omitted).

Pursuant to Pa.R.J.A. No. 701(A)(3), as long as Miller continued to accept the assignments and the Pennsylvania Supreme Court continued to appoint him, Miller would have retained Senior Magisterial District Judge status from the date of his initial application in 2006 through "the last day of the calendar year in which [Miller] attain[ed] age seventy-eight[.]" *Id.* However, on February 4, 2013, the Pennsylvania Court of Judicial Discipline ordered: "[**Miller**] **is suspended from any and all duties which he may have as a** [S]enior **Magisterial District Judge** and [Miller] henceforth shall not be eligible to accept any assignments as a [S]enior Magisterial District Judge." S.R.R. at 6b (emphasis added). From Miller's 2006 application for Senior Magisterial District Judge status through his February 4, 2013 suspension, Miller was bound by the Rules Governing Standards of Conduct of Magisterial District Judges (Standards of Conduct).[5] Moreover, the Pennsylvania

---

[5] *See* Rule 21 of the Standards of Conduct entitled "Continuing Education Requirement: Senior Magisterial District Judges." *Id.* Clearly, the Standards of Conduct applied equally to

Supreme Court issued 25 separate orders expressly appointing Miller as a Senior Magisterial District Judge after his assignment to the Philadelphia Traffic Court ended. *See* S.R.R. at 40b-64b. The first order, dated January 1, 2009, temporarily assigned Miller as a Senior Magisterial District Judge from January 1, 2009 to January 31, 2009. S.R.R. at 40b. The last order dated November 19, 2012, assigned Miller as a Senior Magisterial District Judge from December 1, 2012 to December 31, 2012. S.R.R. at 64b. In addition, Miller was eligible to be assigned by the Pennsylvania Supreme Court until the Pennsylvania Court of Judicial Discipline's February 4, 2013 order suspending him.

As the *Shiomos* Court explained: "With each appointment there is a renewal of the agreement to perform the term of public service without violating Act 140; an agreement which encompasses all that has gone before." *Shiomos,* 626 A.2d at 162. The clear language of Act 140 states: "Each time a public office or public employee is . . . appointed . . . or otherwise changes a job classification, there is a termination and renewal of the contract for purposes of [Act 140]." 43 P.S. § 1313(c). As Miller retained Senior Magisterial District Judge status at the time the misconduct occurred, this Court holds that Miller was a public official and/or public employee subject to Act 140 at the time he committed the crime. *Shiomos.* Accordingly, the Board properly denied Miller's appeal from the Act 140 forfeiture of his pension benefit.[6]

---

commissioned MDJs and senior MDJs. Consequently, when the Standards of Conduct were revised in 2014, the Supreme Court clarified said application to senior judges by adding: "All senior magisterial district judges, active or eligible for recall to judicial service, shall comply with the provisions of these Conduct Rules[.]" Revised Standards of Conduct, Terminology, Application.

[6] Although the Board denied Miller's appeal for a different reason, "we may affirm an agency's decision 'on other grounds where grounds for affirmance exist.'" *Turner v. Unemployment Comp. Bd. of Review,* 899 A.2d 381, 385 (Pa. Cmwlth. 2006) (quoting *Kutnyak v. Dep't of Corr.,* 748 A.2d 1275, 1279 n.9 (Pa. Cmwlth. 2000)).

Miller next contends that the forfeiture of his pension benefits violates the Eighth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 13 of the Pennsylvania Constitution due to the excessive nature of the forfeiture. Miller cites to *Scarantino v. Public School Employees' Retirement Fund*, 68 A.3d 375 (Pa. Cmwlth. 2013), to support his position.

In *Scarantino*, the Court explained:

> Article I, Section 13 of the Pennsylvania Constitution provides that: 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted.' The Eighth Amendment to the [U.S.] Constitution provides that 'excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. . . .
>
> **The Excessive Fines Clause of the Eighth Amendment is only implicated if the fine is a punishment. Forfeitures are 'fines' if they constitute punishment for an offense. The relationship between a public school employee and the []SERS is contractual in nature.** Section 3(a) of [Act 140] provides for the mandatory disqualification and forfeiture of benefits upon 'conviction[ ] or plea[ ] of guilty or no defense to any crime related to public office or public employment.' **Section 3(b) [of Act 140] provides that the conviction or plea is a breach of the public employee's contract with his employer.** In order to receive retirement benefits, an employee must satisfy all of the conditions precedent such as minimum retirement age and requisite years of service. An additional condition precedent for eligibility to receive pension benefits is that an employee cannot have been convicted of one of the enumerated crimes or a substantially the same federal crime. Such a conviction breaches the employee's contract and renders him ineligible to receive pension benefits.

*Scarantino*, 68 A.3d at 384-85 (citations omitted; emphasis added). The *Scarantino* Court held: "The forfeiture of [the p]etitioner's pension was not a fine imposed for

11

conviction of his offense. . . . Rather, [the p]etitioner's forfeiture of his pension resulted from a breach of the contract between [the p]etitioner and []SERS." *Id.* at 385 (footnote omitted).

Miller asserts that he had no contract with SERS after he was no longer assigned to the Philadelphia Traffic Court, because he "was not active or operating as a judge at the time of his misconduct[;]" thus, the forfeiture was a punishment rather than a breach of contract. Miller Br. at 10. We disagree. Each Supreme Court appointment of Miller assigning him as a Senior Magisterial District Judge was "a renewal of the agreement to perform the term of public service without violating Act 140; **an agreement which encompasses all that has gone before**." *Shiomos,* 626 A.2d at 162 (emphasis added). After Miller's assignment in the Philadelphia Traffic Court ended, the Pennsylvania Supreme Court assigned him as a Senior Magisterial District Judge beginning January 1, 2009 through his last appointment which ended December 31, 2012, thus, his agreement to serve without violating Act 140 continued through December 31, 2012. Because Miller's misconduct occurred during the time the Pennsylvania Supreme Court approved him for Senior Magisterial District Judge status and his misconduct clearly violated Act 140, we hold that the forfeiture was a breach of contract. Accordingly, "[t]he Excessive Fines Clause of the Eighth Amendment is [not] implicated[.]" *Scarantino*, 68 A.3d at 384.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

12

Kenneth N. Miller, :
          Petitioner :
         :
          v. :
         :
State Employees Retirement :
System, : No. 1650 C.D. 2015
          Respondent :

## O R D E R

AND NOW, this 24th day of May, 2016, the Pennsylvania State Employees Retirement Board's August 12, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge