# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Central Transport and Cherokee    :
Insurance Inc.,    :
         Petitioners    :
    :
    :  No.  580 C.D. 2020
    v.    :
    :  Submitted: September 25, 2020
Workers' Compensation Appeal    :
Board (Thornton),    :
         Respondent    :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                  FILED: May 5, 2021

        Central Transport and Cherokee Insurance, Inc. (collectively, Employer) petitions for review of the order of the Workers' Compensation Appeal Board (Board) mailed on May 27, 2020, which affirmed the order of a Worker's Compensation Judge (WCJ) dismissing Employer's termination petition on the grounds that the termination petition was barred by the doctrine of *res judicata*.[2] Upon review, we affirm.

## Background

        In this case, Employer filed a termination petition alleging that Claimant had recovered from his work injuries. At a subsequent hearing, the termination petition

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

[2] Donald Thornton (Claimant) is not participating in the instant appeal.

was amended to a Compromise and Release (C & R) agreement where the parties settled Claimant's entitlement to wage/specific loss and to medical benefits. The WCJ dismissed the termination petition as moot. Shortly after the C & R agreement was entered, Employer filed another termination petition again declaring that Claimant was fully recovered from his work injuries. The question here is whether the second termination petition is barred by *res judicata*.

The factual background of the instant matter is uncontested. On July 6, 2016, Claimant sustained a work-related injury in the nature of an "[o]pen fracture of the proximal phalanx which was extra articular, as well as a particular disruption of the extensor mechanism, an ulnar digital neuroma with neuropraxia and radial digital neurapraxia as well as partial amputation of the right thumb and medial neuropathy." (Reproduced Record (R.R.) at 22a.) Employer filed a termination petition on November 19, 2018. (R.R. at 5a.) However, on March 14, 2019, at a hearing before WCJ Kelly Melcher, the termination petition was amended to seek approval of a C & R agreement between the parties. *Id*. Commensurately, the parties entered into a C & R agreement pursuant to Section 449 of the Workers' Compensation Act (Act).[3, 4]

The C & R agreement resolved Claimant's entitlement to benefits, specifically, all wage loss benefits, specific loss benefits, and medical benefits. (R.R. at 23a.) Accordingly, Claimant was to be paid a one-time lump sum in the amount of $90,000.00 to resolve his entitlement to wage/specific loss benefits. *Id*. Furthermore, the C & R agreement stated that "[m]edical bills which are reasonable, necessary, and

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

[4] This section provides, in pertinent part, that "[n]othing in this act shall impair the right of the parties interested to compromise and release, subject to the provisions herein contained, any and all liability which is claimed to exist under this act on account of injury or death." Section 449 was added by the Act of June 24, 1996, P.L. 350, 77 P.S. §1000.5(a).

2

causally related to the injury . . . will remain the responsibility of Employer, in accordance with the cost containment provisions of the [Act]." *Id.* The C & R agreement required Employer to either "fund [an] MSA[5] and stop paying Claimant's medical benefits or continue paying Claimant's medical benefits." *Id.* In a written decision, dated March 15, 2019, WCJ Melcher accepted the C & R agreement, and incorporated it into her decision as factual findings. (WCJ Melcher Findings of Fact (F.F.) Nos. 4-6, R.R. at 20a.) In the same decision, WCJ Melcher dismissed the November 19, 2018 termination petition as moot. *Id.*

On March 19, 2019, four days after WCJ Melcher accepted the C & R agreement, Employer filed another termination petition alleging that Claimant was no longer entitled to benefits because he fully recovered from his work injury on October 22, 2018. (Certified Record (C.R.) Item No. 2.) By decision circulated April 26, 2019, WCJ Donald Poorman denied the March 19, 2019 termination petition. (C.R. Item No. 4.) WCJ Poorman found that the termination petition filed on March 19, 2019, was identical to the one filed on November 19, 2018. (WCJ Poorman F.F. No. 5, C.R. Item No. 4.) WCJ Poorman noted that on April 3, 2019, a hearing was held on the March 19, 2019 petition, where Employer submitted the deposition testimony of Dr. John Pasquella. (WCJ Poorman F.F. No. 6, C.R. Item No. 4.) WCJ Poorman dismissed Employer's termination petition under *res judicata* on the grounds that it was identical

---

[5] It is unclear from the agreement what an MSA is. However, logic would dictate that it refers to a Medicare Set-Aside Arrangement. *See Sheaffer v. Workers' Compensation Appeal Board (Standard Steel, LLC)* (Pa. Cmwlth., No. 783 C.D. 2016, filed Feb. 14, 2017) (unreported) ("When a claimant is entitled to Medicare payments or may be entitled to Medicare payments in the future, workers' compensation agreements settling future medical benefits must adequately consider Medicare's interests. 42 U.S.C. §1395y(b)(2); 42 [C.F.R.] §§411.46, 411.47, and 411.21. The recommended method to protect Medicare's interests is a Workers' Compensation Medicare Set Aside Account, a financial agreement that allocates a portion of a workers' compensation settlement to pay for future medical services related to the work injury, illness, or disease.") (citation omitted).

to the one dismissed as moot before WCJ Melcher on March 15, 2019. (C.R. Item No. 4.) The WCJ also explained that under the C & R agreement, Employer remained obligated to pay for Claimant's medical benefits. *Id.*

Employer appealed to the Board alleging that WCJ Poorman erred in dismissing the termination petition based on *res judicata*. On May 27, 2020, the Board affirmed the decision of WCJ Poorman. (C.R. Item No. 7, R.R. at 117a-23a, Board's Decision at 1.) The Board framed the issue as purely one of law. (Board's Decision at 1-2.) The Board rejected Employer's claim that technical *res judicata* was inapplicable because Employer did not have the opportunity to actually litigate the merits of its November 19, 2018 termination petition. *Id.* at 2. The Board concluded that technical *res judicata* applies where the following four factors are met: "1. identity of the thing sued upon or for; 2. identity of the cause of action; 3. identity of the persons and parties to the action; 4. identity of the quality or capacity of the parties suing or sued." (Board's Decision at 3 (quoting *Patel v. Workmen's Compensation Appeal Board (Sauquoit Fibers Co.)*, 488 A.2d 1177 (Pa. Cmwlth. 1985).) The Board further reasoned that *res judicata* applies both to claims that were *actually litigated* and those that *should have* been litigated. (Board's Decision at 3.)

As to this case, the Board held that because "the instant case does not have a final judgment on the merits[,] and the parties did not actually litigate either [t]ermination [p]etition, collateral estoppel does not apply." (Board's Decision at 3.) Instead, the Board concluded technical *res judicata* applied. *Id.* The Board's reasoning indicates that under its interpretation of technical *res judicata*, a final determination on the merits is not necessary. *Id.* at 2. Thus, the Board proceeded to analyze the four identities needed to prove technical *res judicata*. *Id.* at 2-3. The Board reasoned that the second and third identities were satisfied because the parties are the same and are

4

in the same capacity. *Id*. at 3. Further, it determined that the thing sued upon and the cause of action were the same because the termination petition filed by Employer on November 19, 2018 was identical to the one filed on March 19, 2019. *Id*. The Board explained that both termination petitions were based on the allegation that Claimant's work injury fully ceased as of October 22, 2018. *Id*. at 4. The Board concluded that, if Employer had been successful on the first termination petition before WCJ Melcher, the instant litigation would be unnecessary because both petitions are based on the same facts. *Id*. Furthermore, the Board explained that Employer did not appeal WCJ Melcher's March 15, 2019 order, thus failing to preserve its right to proceed on the merits. *Id*. Thus, the Board held that Employer was precluded by *res judicata* from relitigating the termination petition. *Id*. Employer appealed to this Court.

**Discussion**

On appeal, Employer raises two issues. First, it argues the Board erred in concluding that its March 19, 2019 termination petition was barred by *res judicata*. Second, it argues that the Board erred in failing to find that substantial competent evidence demonstrated that Claimant was fully recovered from his work injury.

With respect to the first issue, Employer argues that *res judicata* does not apply because its November 19, 2018, termination petition was never adjudicated and a final determination on the merits never existed with respect to that petition. Further, it asserts that no evidence was submitted on that termination petition, and therefore, it was not litigated. Similarly, Employer notes that instead of litigating the termination petition, it agreed to amend its petition to seek the approval of the C & R agreement. Employer refutes the Board's conclusion that, had it been successful before WCJ Melcher, the instant litigation would be unnecessary because it withdrew its

5

termination petition and offered no evidence on the petition. Employer argues that this also prevented it from filing an appeal from WCJ Melcher's decision.

Employer asserts that in order for *res judicata* to apply, a final determination on the merits must exist. Accordingly, Employer argues that the March 15, 2019 decision of WCJ Melcher, approving of the C & R agreement, did not constitute a final decision, whereupon *res judicata* could apply. Further, Employer argues that the Board erred by failing to reverse WCJ Poorman's determination that, because the C & R agreement provided that Employer would continue to provide Claimant's medical benefits, the termination petition was properly denied. Employer maintains that while under the C & R agreement it was to continue providing medical benefits, it never waived its right to seek a termination petition as to those benefits.[6]

**A. Whether *Res Judicata* Bars the March 19, 2019 Termination Petition**

"*[R]es judicata* encompasses two related, yet distinct principles: technical *res judicata* and collateral estoppel." *Henion v. Workers' Compensation Appeal Board (Firpo & Sons, Inc.)*, 776 A.2d 362, 365 (Pa. Cmwlth. 2001). "Technical *res judicata* provides that when a final judgment on the merits exists, a future suit between the parties on the same *cause of action* is precluded." *Id.* (emphasis added). Whereas, "[c]ollateral estoppel acts to foreclose litigation in a later action of *issues of law or fact* that were actually litigated and necessary to a previous final judgment." *Id.* (emphasis added). Where there is a final judgment on the merits, *res judicata* applies when these four factors are established: "(1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued." *Id.* Technical *res judicata*

_____

[6] Due to our disposition below, we need not discuss Employer's claim that the Board erred in failing to address whether Claimant was fully recovered.

"applies to claims that were actually litigated as well as those matters that should have been litigated." *Id.*

In the context of a workers' compensation claim, we have described collateral estoppel, as follows:

> The doctrine of collateral estoppel, often referred to as issue preclusion, "is designed to prevent relitigation of an issue in a later action, despite the fact that the later action is based on a cause of action different from the one previously litigated." *Pucci v. Workers' Compensation Appeal Board (Woodville State Hosp[ital])*, 707 A.2d 646, 647-48 (Pa. Cmwlth. 1998). Collateral estoppel applies where:
> > (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party in the prior case and had a full and fair opportunity to litigate the issue; and (4) the determination in the prior proceeding was essential to the judgment.
> *Id.* at 648.

*Namani v. Workers' Compensation Appeal Board (A. Duie Pyle)*, 32 A.3d 850, 856-57 (Pa. Cmwlth. 2011). Both technical *res judicata* and collateral estoppel require a "final judgment on the merits." *Id.* at 856. Contrary to the Board's position, for technical *res judicata* to apply, a final determination on the merits must exist. *Namani*, 32 A.3d at 856; *Weney v. Workers' Compensation Appeal Board (Mac Sprinkler Systems, Inc.)*, 960 A.2d 949, 954 (Pa. Cmwlth. 2008); *Henion*, 776 A.2d at 365.

First, we must address Employer's contention that a final judgment on the merits never existed. We disagree. Generally, we have stated the following as to the finality of C & R agreements: "Once approved, a valid compromise and release agreement is 'final, conclusive, and binding on the parties.'" *H.A. Harper Sons, Inc.*

7

*v. Workers' Compensation Appeal Board (Sweigart)*, 84 A.3d 363, 367 (Pa. Cmwlth. 2014) (citations omitted); *DePue v. Workers' Compensation Appeal Board (N. Paone Construction, Inc.)*, 61 A.3d 1062, 1067 (Pa. Cmwlth. 2013). "In essence, the C & R, once approved by the WCJ, is the final decision in a workers' compensation case. . . ." *Department of Labor & Industry, Bureau of Workers' Compensation v. Workers' Compensation Appeal Board (US Food Service)*, 932 A.2d 309, 315 (Pa. Cmwlth. 2007). "Simply put, once the WCJ enters an order approving a [C & R a]greement, the order is final, and an aggrieved claimant's only recourse, if any, is an appeal to the Board under Section 419 of the Act[7]. . . ." *Pimentel v. Workers' Compensation Appeal Board (United Neighborhood Centers of Lackawanna County)*, 845 A.2d 234, 238 (Pa. Cmwlth. 2004).

We have considered a C & R agreement as a final determination for the purposes of collateral estoppel. In *Stiles v. Workers' Compensation Appeal Board (Department of Public Welfare)*, 853 A.2d 1119 (Pa. Cmwlth. 2004), a WCJ approved a C & R agreement between the parties, which settled the claimant's wage loss claims in one lump sum payment of $100,000.00, and provided that the employer was responsible to continue paying reasonable and necessary medical bills. *Id*. at 1121. The claimant subsequently filed a petition to reinstate compensation, alleging that at the time she entered her C & R agreement, she was suffering from severe psychological and physical injuries which manifested as post-traumatic stress syndrome and that she did not understand the monetary value of her claim. *Id*. at 1122. In other words, the claimant argued that she did not understand the full legal significance of the agreement. *Id*. at 1123. The employer moved to dismiss the reinstatement petition under collateral estoppel. *Id*. The WCJ determined that the claimant was mentally competent to

_____

[7] Added by the act of June 26, 1919, P.L. 642, 77 P.S. §852.

8

comprehend the legal ramifications of entering into the agreement, and made a factual finding reflecting the same. *Id*. at 1124. We held that the claimant's mental competency was an issue actually litigated at the hearing before the WCJ, was essential to the judgment approving the C & R agreement, and was material to the adjudication. *Id*. Thus, we barred the claimant's petition under collateral estoppel. Clearly, a C & R agreement accepted by a WCJ is final for the purpose of collateral estoppel, and by extension, technical *res judicata*. *See also Farner v. Workers' Compensation Appeal Board (Rockwell International)*, 869 A.2d 1075, 1078 (Pa. Cmwlth. 2005). We can conclude, therefore, that the C & R agreement accepted by WCJ Melcher constituted a final determination on the merits. As explained above, a final determination on the merits is necessary for either technical *res judicata* or collateral estoppel to apply.

The plain language of the C & R agreement approved by WCJ Melcher indicates the following. The C & R agreement appears to have been completed on a standard form provided by the Workers' Compensation Office of Adjudication. (R.R. at 22a.) The C & R agreement consisted of separate numbered questions, which required the parties to identify the nature of the settlement. *Id*. at 22a-24a.

Under question number 10, the parties were asked to "[s]ummarize all **wage loss, specific loss** and **medical benefits** to be paid in conjunction with this [agreement]." *Id*. (emphasis in original). The text beneath this box indicates that Claimant was to be paid "$90,000.00 for a one[-]time lump sum payment to resolve [his] entitlement to any benefits he may be entitled under the [Act], **except medical benefits**. **Medical bills which are reasonable, necessary, and causally related to the injury [described in this Agreement] will remain the responsibility of []** **Employer**." *Id*. (emphasis added). The C & R agreement further provided a specific avenue for Employer to continue paying medical benefits. Specifically, "Employer

9

reserve[d] the right to either fund [an] MSA and stop paying Claimant's medical benefits or continue paying Claimant's medical benefits." *Id*.

The C & R agreement encompassed three types of benefits: wage loss, specific loss, and medical. In its brief, Employer appears to argue that it retained its right to seek the termination of Claimant's medical benefits in the C & R agreement. Yet, Employer's March 19, 2019 termination petition does not specify which benefits it is seeking to terminate. Specifically, the termination petition filed on March 19, 2019 seeks to "[t]erminate [c]ompensation [b]enefits (Stop payment of Workers' Compensation) due to Claimant's full recovery as of October 22, 2018." (C.R. Item No. 2.) WCJ Poorman concluded that this was identical to the petition filed on November 19, 2018, which WCJ Melcher dismissed as moot. (WCJ Poorman F.F. No. 5, R.R. at 31a.) Due to the lack of clarity as to what benefit Employer is seeking to terminate, in an abundance of caution, we will address all the of benefits identified in the C & R agreement.

With respect to Claimant's benefits, we first address whether Employer's termination petition was precluded by *res judicata* as to Claimant's wage and specific loss benefits. The procedural posture of this case raises the question as to whether technical *res judicata* or collateral estoppel applies. Technical *res judicata* (*i.e.*, claim preclusion) applies to **claims** that were or should have been litigated in a prior action, whereas, collateral estoppel renders **issues of law or fact** "incapable of relitigation in a subsequent suit." *Robinson v. Fye*, 192 A.3d 1225, 1231 (Pa. Cmwlth. 2018). The Pennsylvania Supreme Court recently detailed the differences between these doctrines.

> *Res judicata* – literally, a thing adjudicated – is a judicially created doctrine. *See Estate of Bell*, [] 343 A.2d 679, 681 ([Pa.] 1975). It bars actions on a claim, or any part of a claim, which was the subject of a prior action, or could have been raised in that action. *See R/S Financial Corp. v. Kovalchick*,

10

[] 716 A.2d 1228, 1230 ([Pa.] 1998); *Balent v. City of Wilkes-Barre*, [] 669 A.2d 309, 313 ([Pa.] 1995). This Court has explained that

> [r]es judicata, or claim preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication. The doctrine of res judicata developed to shield parties from the burden of re-litigating a claim with the same parties, or a party in privity with an original litigant, and to protect the judiciary from the corresponding inefficiency and confusion that re-litigation of a claim would breed.
>
> *Wilkes ex rel. Mason v. Phoenix Home Life [Mutual Insurance] Co.*, [] 902 A.2d 366, 376 ([Pa.] 2006) (citation omitted).

*In re Coatesville Area School District*, 244 A.3d 373, 378 (Pa. 2021). In contrast, the Court explained that

> [c]ollateral estoppel is similar in that it bars re-litigation of an issue that was decided in a prior action, although it does not require that the claim as such be the same. For example, if, in a breach of contract action, the defendant asserts that the contract is invalid because of fraud, but the contract is ruled valid and the defendant is found liable, in a future lawsuit against the same party alleging a separate breach of the same contract the defendant is precluded from asserting the invalidity of the contract based on fraud. *See* Restatement (Second) of Judgments §27, cmt. a, illus. 2 ([Am. Law. Inst.] 1982).

*In re Coatesville*, 244 A.3d at 379.

11

Under the procedural posture of this case, collateral estoppel is applicable rather than technical *res judicata*.[8] Instantly, it is not a claim that is in question, but rather, an issue. As *In re Coatesville* illustrates, it would be impermissible under collateral estoppel for a party that unsuccessfully defended a breach of contract claim on the grounds of fraud to raise fraud as a defense to a separate breach of the same contract. *Id.* Here, it is impermissible for Employer, which accepted liability for Claimant's injury and agreed to resolve and pay Claimant's wage and specific loss benefits, to reverse course after a final decision on the merits, and to assert that Claimant is not entitled to those benefits because he has fully recovered. This issue was already decided in the C & R agreement, which was accepted by WCJ Melcher.

Further, the elements of collateral estoppel are satisfied. As to the first element, the issue of whether Claimant was entitled to his wage/specific loss benefits under the March 19, 2019 termination petition is identical to the issue that was settled in the C & R agreement, which stated that Claimant was to receive a $90,000.00 lump sum for any wage/specific loss benefit to which he was entitled. Second, as noted, the C & R agreement that was accepted by WCJ Melcher constituted a final determination on the merits. Third, the parties are the same and had the full and fair opportunity to litigate the issue. Specifically, Employer chose to amend its November 19, 2018 termination petition to a C & R agreement; it could have, if it so chose, sought to terminate Claimant's entitlement to wage/specific loss benefits instead of settling those issues. Finally, WCJ Melcher's determination of Claimant's entitlement to a $90,000.00 lump sum was essential to the C & R agreement, which settled his entitlement to wage/specific loss benefits.

---

[8] This Court may affirm a decision on other grounds, where grounds for affirmance exists. *Miller v. State Employees Retirement System*, 137 A.3d 674, 680 n.6 (Pa. Cmwlth. 2016).

With respect to Claimant's medical benefits, Employer suggests that, even though the C & R agreement provided for the continued payment of medical benefits, "it never waived Employer's right under the [C & R agreement] to proceed with future petitions, including a [t]ermination [p]etition regarding [the] payment of medical benefits." (Employer's Br. at 13.)

However, because the C & R agreement did not expressly preserve to Employer the right to seek termination of Claimant's medical benefits, it is presently precluded from doing so. The plain language of the agreement indicates Claimant was to be paid "$90,000.00 for a one[-]time lump sum payment to resolve [his] entitlement to any benefits he may be entitled under the [Act], **except medical benefits**. **Medical bills which are reasonable, necessary, and causally related to the injury [described in this agreement] will remain the responsibility of [] Employer**." (R.R. at 23a) (emphasis added). Moreover, the C & R agreement provided Employer with two different avenues to continue to pay reasonable and necessary medical expenses. There can be no doubt from the language of the agreement that in terms of liability, Employer was to continue to pay for Claimant's reasonable and necessary medical benefits and medical benefits that are causally related to his accepted work-related injuries. *See infra* note 7. The plain language of the C & R agreement does not logically comport with Employer's argument that it never waived its right to proceed with future petitions including a termination petition with regard to Claimant's medical benefits. This is because Employer did not expressly preserve its right to seek termination of Claimant's benefits. To the contrary, the agreement indicates that "[t]he parties wish to enter into a [C & R agreement] to resolve Claimant's entitlements *to all future benefits*." (R.R. at 24a.) Nothing in the C & R agreement suggests that medical benefits are not contemplated in this statement. Indeed, the C & R agreement expressly provides that

13

"[m]edical bills . . . will remain the responsibility of [ ] Employer," (R.R. at 23a), and, absent the creation of a special fund to pay for Claimant's medical benefits, Employer agreed to "continue paying Claimant's medical benefits." *Id.*

Our decision in *DePue* is instructive. In that case, the claimant and the employer entered into a C & R agreement settling the claimant's indemnity benefits for the accepted injury of a severe closed head injury with seizure disorder and short-term memory loss. 61 A.3d at 1064. Employer agreed to continue to pay the claimant's reasonable and necessary medical benefits. *Id.* The WCJ accepted and adopted the C & R agreement. *Id.* Subsequently, the claimant filed a penalty petition against the employer for refusing to pay medical bills and a review petition alleging that the description of his work injuries was incorrect. *Id.* The claimant alleged that the petitions were with regard to a left shoulder injury. *Id.* The WCJ denied the review petition and penalty petition, concluding that the review petition was barred by *res judicata*, because the left shoulder injury alleged by the claimant was not accepted as an injury by the employer in the C & R agreement. *Id.* at 1064-65. In no uncertain terms we stated that "[o]nce a C & R agreement is approved, any issue which was not expressly reserved in the agreement may not be raised later." *Id.* at 1067. We held that "[b]ecause [the c]laimant did not expressly reserve his right to add a new injury to the description of his work injuries, he was precluded from doing so more than two years after the approval of the C & R agreement." *Id.* Here, because Employer did not expressly preserve its right to seek termination of Claimant's medical benefits, it is precluded from doing so.[9]

---

[9] There is a distinction to be made between Employer admitting to liability to Claimant's reasonable and necessary medical benefits, and the amount of benefits to be paid. In *Rogele, Inc. v. Workers' Compensation Appeal Board (Hall)*, 198 A.3d 1195, 1201 (Pa. Cmwlth. 2018), we explained:

**(Footnote continued on next page…)**

14

"It is accepted that, pursuant to [Section 301(c) of] the [Act], an employer is only liable to pay for a claimant's medical expenses that arise from and are caused by a work-related injury. 77 P.S. §411(1)[.]" *Kurtz v. Workers' [Compensation] Appeal [Board] (Waynesburg College)*, 794 A.2d 443, 447 (Pa. Cmwlth. 2002) (footnote omitted). Although the burden is initially on the claimant to establish that the injury is work-related, once the employer acknowledges liability for the injury, "the claimant is not required to continually establish that medical treatment of that compensable injury is causally related because the injury for which the claimant is treating has already been established." *Id.* Accordingly, thereafter, the employer has the burden of proving that a medical expense is unreasonable, unnecessary, or is not related to the accepted work injury. *See id.* "[T]his Court has recognized that the issue of causation is separate and distinct from the reasonableness and necessity of medical treatment." *J.D. Landscaping v. Workers' [Compensation] Appeal [Board] (Heffernan)*, 31 A.3d 1247, 1253 (Pa. Cmwlth. 2011).

> Th[is] Court explained in *Bloom* [*v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314 (Pa. Cmwlth. 1996)], that a petition to review medical treatment relates to the issue of the causal connection between medical treatment and the work injury, but utilization review relates to the reasonableness of and necessity for medical treatment. A challenge to particular medical treatment as not being causally related to a work injury, . . . must be filed directly with a WCJ. A challenge to particular treatment as being not reasonable or necessary must be pursued through the administrative utilization review procedures. *Id.*

> *Mercy Douglas Corp. v. Workers' [Compensation] Appeal [Board] (Davis)*, 713 A.2d 722, 725 (Pa. Cmwlth. 1998).

198 A.3d at 1200. Thus, under the C & R agreement, although Employer accepted liability for Claimant's work-related injuries and agreed to pay for Claimant's medical expenses, it reserved a limited right to contest whether the amount of the medical bills or the medical treatments provided were reasonable and necessary via utilization review or were causally related to the work injuries through a review petition.

15

Where a C&R agreement on its face is intended to resolve the issues in a pending termination petition, the underlying termination petition is rendered moot. *US Food Service*, 932 A.2d 309; *Stroehmann Bakeries, Inc. v. Workers' Compensation Appeal Board (Plouse)*, 768 A.2d 1193 (Pa. Cmwlth. 2001). WCJ Melcher correctly determined that the November 19, 2018 termination petition was moot. Similarly, because the C & R agreement already decided Employer's liability with respect to Claimant's medical benefits, there was nothing left to decide under the March 19, 2019 termination petition.

Moreover, collateral estoppel would clearly apply to prevent relitigation of Claimant's entitlement to benefits. As we have well established, the issue of Claimant's entitlement to medical benefits was decided in the C & R agreement, which was a final determination on the merits. The parties are identical and had a full and fair opportunity to litigate the issue. If Employer did not want to be responsible for Claimant's reasonable and necessary medical benefits, it should not have agreed to liability in the C & R agreement, or at a minimum, expressly preserved its right to challenge Claimant's entitlement at a later time. The determination of Claimant's entitlement to benefits was essential to the C & R agreement. Thus, Employer's second termination petition is barred by collateral estoppel.

Having concluded that the second termination petition is barred by the doctrine of *res judicata*, we need not address the Board's failure to consider whether Claimant was fully recovered from his injury.

_____
PATRICIA A. McCULLOUGH, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Central Transport and Cherokee     :
Insurance Inc.,     :
           Petitioners     :
    :
    :    No.   580 C.D. 2020
        v.     :
    :
Workers' Compensation Appeal     :
Board (Thornton),     :
           Respondent     :

## ***ORDER***

AND NOW, this 5th day of May, 2021, the May 27, 2020 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge